## PARKS et al. v. MANDLER et al.

No. 26521.   March 23, 1937.

West & Davidson, for plaintiffs in error.

C. W. McLees and Howell Parks, for defendants in error.

RILEY, J. This is an appeal from a judgment denying an injunction against the issuance of a tax deed.

The facts out of which the controversy arose are substantially that plaintiff in error, Laura Parks, was the executor of, and trustee under, the will of O. F. Parks, deceased, who in his lifetime was the husband of Laura Parks. The other plaintiffs are heirs and beneficiaries under the will.

O. F. Parks died about 1911. Thereafter Laura Parks, as executrix and trustee, executed a mortgage covering approximately 320 acres of land in the E. ¼, section 1, township 14 N., range 17 E., in Muskogee county, to W. E. Rowsey. This mortgage was given to secure a loan of about $10,000.

Sometime prior to March 15, 1929, a suit had been commenced by Rowsey to foreclose said mortgage. At that time the taxes against said land were delinquent for the years 1923 to 1927, inclusive.

Plaintiff alleged that while said foreclosure action was pending, Laura Parks and Rowsey entered into an agreement whereby Laura Parks was to execute an additional note and mortgage to Rowsey in the sum of $8,513.42, covering several hundred acres of land in Tulsa and Wagoner counties; that therefor Rowsey agreed to apply the proceeds of said second note to the payment of the delinquent taxes against the land covered by the first mortgage, and other land owned by plaintiff, and the delinquent interest on the first mortgage, attorneys' fees, etc., and to dismiss the foreclosure suit. That said additional note and mortgage were executed by plaintiff as she had agreed; that tax sale certificates had been issued for the delinquent taxes against the land covered by said first mortgage; that Rowsey did redeem or purchase said tax sale certificates, but instead of surrendering them to plaintiff or to the county treasurer for cancellation, Rowsey, for the purpose of defrauding plaintiffs, and in violation of his agreement, and notwithstanding the fact that he had accepted land received the additional note and mortgage given for the purpose of securing him for the payment of said taxes, assigned the tax sale certificates against the land covered by the first mortgage to defendant C. W. Mandler, one of his business associates, who took said certificates with full knowledge of the facts; that C. W. Mandler had applied to the county treasurer for the issuance of a tax deed based upon said tax sale certificates, and that the county treasurer was about to issue such deed.

Plaintiffs prayed for an injunction against the issuance or acceptance of a tax deed, and that said tax sale certificates be adjudged to have been paid in full by plaintiff, and that they be ordered delivered up for cancellation.

Mandler, Rowsey, and the county treasurer were all made parties defendant, but the action was later dismissed as to defendant Rowsey.

Defendant Mandler filed an answer admitting that he held the tax sale certificate, and that he had applied for a tax deed based thereon. He denied that he acquired said certificates by fraud or that his then codefendant had been paid for same; he then alleged that he purchased said tax sale certificates for value and without notice of any fraud, and again denied that there was any fraud either on his part or on the part of his codefendant, W. E. Rowsey.

The issues were tried to the court, and at the close of plaintiffs' evidence, a demurrer thereto was sustained and judgment was entered for defendants, and the county treasurer was authorized and directed to issue a tax deed to defendant Mandler, upon demand, without further notice.

The principal contention is that the court erred in sustaining the demurrer to plaintiffs' evidence, and in rendering judgment for defendants.

While the judgment of the court does not indicate upon what ground the order was based, it must have been upon the ground that plaintiffs had failed to prove their allegation that defendant Mandler had taken the tax sale certificates with full knowledge that they had been paid for. It could not be otherwise, for plaintiffs proved without conflict or contradiction every allegation in the petition as to the alleged fraudulent conduct of W. E. Rowsey. Under the evidence there can be no doubt that Rowsey agreed to pay all delinquent taxes against the land in controversy, and that he himself made the investigation as to the amount necessary to pay those with other delinquent taxes against plaintiff's land. Before that, he had commenced the action to foreclose his mortgage against this particular tract of land. At the same time he attached all or nearly all the other land owned by the estate of O. F. Parks in Oklahoma, amounting to several hundred acres and located in some five counties. He was able to do this without giving bond, for defendants in that action were nonresidents of the state of Oklahoma. While the land was thus attached, he proposed the settlement. He then made the investigation as to the amount necessary to pay the delinquent taxes, interest, costs, attorney fees. He then prepared the new note and mortgage in the amount necessary, with possibly an additional $100, and sent them to Laura Parks for execution. He then wrote her, explaining what taxes he proposed to pay, the amount necessary, and "After I have gotten the note back and the mortgage

recorded, then this suit will be dismissed in the various counties." In this connection it may be observed that he inserted a provision in the mortgage that it was not only to secure the note given covering the taxes, but was to secure the note covered by the original mortgage. The amount included in the new note representing taxes paid upon the land in controversy was $1,300 or $1,400.

After he received the new note and mortgage, Rowsey dismissed the foreclosure proceedings. Instead of surrendering the tax sale certificates here involved for cancellation, he kept possession thereof until about December 9, 1930, or something more than one year, at which time he assigned them, with others, to defendant Mandler, for which Mandler gave his unsecured demand note which was afterwards paid.

It seems inconceivable, but it appears that Rowsey assigned these particular tax sale certificates when he knew he had received a second note from Mrs. Parks to secure him for the same. He assigned them to Mandler for about $1,400, and placed Mandler in a position to obtain a tax deed superior to his mortgage lien of some $10,000, or more. He was served with notice of application for the tax deed and sat idly by and tacitly, if not actively, assisted Mandler in the litigation.

Fraud and bad faith on the part of Mr. Rowsey appears conclusively proven.

The real question is whether sufficient notice is shown to defendant Mandler. About all that is shown by the evidence is that Rowsey and Mandler were friends and business associates. They bought and sold property from and to each other. Both were dealers to some extent in tax sale certificates. Mandler knew of the existence of the mortgages on the land and says that he assumed that Rowsey was the owner thereof, that Mandler often borrowed money from Rowsey in sums up to $5,000, or more, on his unsecured note. That he knew of the former litigation involving the foreclosure proceedings and knew it had been adjusted in some way. He stoutly denied that he had any knowledge whatever of the transaction between Mrs. Parks and Rowsey relative to the payment of the taxes in question.

We are not prepared to say under the record that the order and judgment of the trial court is against the clear weight of the evidence, and should be reversed. At the same time it appears that plaintiff had reasonable grounds upon which to base her

belief that Mandler did have knowledge of the fact sufficient to put him upon inquiry, which, if pursued, would have led him to notice.

We are therefore not inclined to affirm the judgment in whole as entered. It may be that plaintiffs, under the law, would have the right to redeem at any time before a tax deed is actually issued, even under the judgment as entered, but we believe that justice would be best served by allowing her a reasonable time within which to redeem after the mandate of this court is spread of record in the trial court. She should have at least 40 days in which to redeem, if she desires so to do. We express no opinion as to other remedy that may or may not be available to plaintiffs in error for the wrong wrought by the fraud herein mentioned.

The decree is modified accordingly, and, as so modified, is affirmed.

BAYLESS, V. C. J., and BUSBY, PHELPS, CORN, and HURST, JJ., concur. OSBORN, C. J., and WELCH and GIBSON, JJ., absent.